## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                         **Case No. 07-CR-123**

**LEVEL LEE**
        **Defendant.**

### SENTENCING MEMORANDUM

Defendant Level Lee pleaded guilty to participating in a cocaine distribution conspiracy, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(C) & 846, and I set the case for sentencing. In imposing sentence, the district court must first calculate the advisory guideline range, then impose sentence under all of the factors enunciated in 18 U.S.C. § 3553(a). See, e.g., United States v. Scott, 503 F. Supp. 2d 1097, 1099 (E.D. Wis. 2007) (citing United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007)).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 20, U.S.S.G. § 2D1.1(c)(10), added 2 levels for firearm possession, § 2D1.1(b)(1), then subtracted 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 19. Defendant objected to the firearm enhancement and the resulting denial of the safety valve reduction under § 2D1.1(b)(11). The government, upon reviewing all of the evidence, ultimately agreed with defendant.

Under § 2D1.1(b)(1), the defendant receives a 2 level enhancement if a dangerous weapon was possessed. The application notes explain that:

    The enhancement for weapon possession reflects the increased danger of

> violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1 cmt. n.3. Therefore, in order for this enhancement to apply, the government must first show by a preponderance of the evidence that a gun was possessed during the commission of the offense or relevant conduct. If the government is able to do so, the burden shifts to the defendant to show that it was clearly improbable that the gun was connected to the offense. See, e.g., United States v. Womack, 496 F.3d 791, 797-98 (7th Cir. 2007).

In the present case, agents arrested defendant in his home on May 9, 2007, and during a subsequent consent search found a handgun and personal use amounts of marijuana. Agents found no cocaine, drug money or other paraphernalia associated with the instant offense.

Defendant argued that the gun had nothing to do with the offense; he bought it to protect his family and home in a bad neighborhood. Defendant also noted that his offense conduct in this case consisted of obtaining cocaine from one individual, Calvin Coleman, a life-long friend, and supplying a customer he also knew. Under these circumstances, he had no need for a gun in connection with his drug trafficking. Finally, the marijuana was found in a different room from the gun, and in any event constituted personal use drugs, of a different type than what was involved in the offense.

I found that defendant had shown it clearly improbable that this gun was connected to the offense. The record contained no evidence that defendant ever used the gun in connection with the crime, carrying it during deals, for example. There was also no evidence that he used his home for drug dealing, keeping drugs, money or any other paraphernalia there. Thus, the

2

gun served no protective function regarding the offense. Finally, there was no evidence that the marijuana found in the house at the same time as the gun was in any way related to the instant offense of cocaine distribution. The evidence instead showed that defendant lawfully acquired the gun to protect his home and family, not to in any way facilitate his drug activities.[1]

The PSR noted that co-conspirator Coleman also possessed weapons. Co-conspirator liability may apply under § 2D1.1(b)(1). But this does not mean that a defendant is automatically responsible for everything his co-conspirators did. The defendant is responsible for the acts of others only if they are (1) in furtherance of their jointly undertaken criminal activity and (2) reasonably foreseeable to the defendant. See U.S.S.G. § 1B1.3(a)(1)(B). Application note 2 makes clear that the scope of the activity jointly undertaken by the defendant is not necessarily the same as the scope of the entire conspiracy.

In determining drug weight in this case, the parties agreed that defendant was not responsible for all that Coleman distributed; according to the PSR, Coleman's drug weight was 15-50 kg, while defendant's was just 200-300 g. Thus, it was clear that the activity for the two was not necessarily the same. The government also presented no evidence that Coleman possessed guns in furtherance of the activity he and defendant jointly agreed to undertake, or even if he did, that the guns were reasonably foreseeable to defendant. Therefore, I did not apply the firearm enhancement.

Because defendant satisfied all of the other safety valve criteria, see U.S.S.G. § 5C1.2, I also granted a 2 level reduction under § 2D1.1(b)(11). Therefore, I adopted an offense level

---

[1] It was true that this gun was a loaded pistol, not an unloaded hunting rifle, but the Commission has never said that the example in the application note is exclusive. Courts have to consider the facts of each case.

3

of 15, criminal history category of I, and imprisonment range of 18 to 24 months. I proceeded then to imposition of sentence under § 3553(a).

## II.  SENTENCE

**A.    Section 3553(a) Factors**

Section 3553(a) directs the court to consider:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the advisory guideline range;

(5)    any pertinent policy statements issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentence disparities; and

(7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). This so-called "parsimony provision" represents the "overarching" command of the statute. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

The district court must give respectful consideration to the guidelines in determining a

4

sufficient sentence, Gall v. United States, 128 S. Ct. 586, 594 (2007), but it may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). The guidelines "are but one factor among those listed in 18 U.S.C. § 3553(a)," United States v. Carter, 530 F.3d 565, 578 (7th Cir. 2008), and "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment," Gall, 128 S. Ct. at 602.

**B.    Analysis**

This case arose out of an investigation of a large-scale cocaine distribution conspiracy, in which Robert Hampton supplied various Milwaukee-area distributors, including Calvin Coleman. Defendant was a lower level participant who bought modest quantities of cocaine from Coleman and distributed it to a customer he knew. He was not a significant dealer by any measure. I acknowledged that defendant possessed a firearm in his home, but for the reasons set forth in the guideline section did not consider that an aggravating factor under 3553(a).

Defendant's character was otherwise quite positive. Thirty-six years old, he had no prior record. He graduated high school, took some courses at MATC and compiled a solid employment record. He held the same job at the Salvation Army for 7 ½ years before losing it after his arrest in this case. Thereafter, he obtained new employment and took additional college classes. He also volunteered with the Girls and Boys Club and the Keystone Leadership Program. His family remained supportive and made positive comments about him, as did his girlfriend, who was at the time of sentencing pregnant with his first child. The only negative I saw in defendant's background was marijuana use, but he stopped that since being on pre-trial release.

The guidelines called for a term of 18-24 months, but under all of the circumstances I found that greater than necessary. This was a low-level, non-violent, first-time offender who

5

presented no danger to the community. His employment record and other positive characteristics showed that he could succeed in the community. He also made efforts to cooperate in this case, which the government agreed I should consider under § 3553(a). I therefore concluded that he deserved a chance on probation. Close supervision in the community, along with a lengthy period of home confinement, provided sufficient punishment, deterrence and protection of the public.

### III. CONCLUSION

Therefore, I placed defendant on probation for three years. As conditions, I ordered him to participate in drug testing and treatment, and to serve 180 days of home confinement on electronic monitoring. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 7th day of August, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge